UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT C. NUCCI, and
XANDERWEE, LLC,

    Plaintiffs,

v.                                                  CASE NO. 8:15-CV-518-17AEP

BUCHANAN INGERSOLL &
ROONEY PC,

    Defendant.
_____/

BUCHANAN INGERSOLL &
ROONEY PC,

    Third-Party Plaintiff,

v.

MICHAEL BOLLENBACK and
BOLLENBACK & FORRET, P.A.,

    Third-Party Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Michael Bollenback and Bollenback & Forret, P.A.'s Motion to Dismiss the Third-Party Complaint. (Dkt. 63). Buchanan Ingersoll & Rooney PC has responded in opposition (Dkt. 65) and Michael Bollenback and Bollenback & Forret, P.A. have filed a reply (Dkt. 68). Upon consideration, the motion to dismiss is **GRANTED**.

## BACKGROUND

In this diversity action, Plaintiffs Robert C. Nucci and Xanderwee, LLC ("Plaintiffs")

sue the law firm of Buchanan Ingersoll & Rooney PC ("Buchanan") for professional malpractice. Buchanan, in turn, has filed third-party claims against Plaintiffs' accountant and accounting firm, Michael Bollenback and Bollenback & Forret, P.A. ("Bollenback"), seeking common-law indemnification, contribution, and equitable subrogation. After careful review, the Court agrees with Bollenback that Buchanan's third-party claims fail as a matter of law, and that Buchanan's proper course is to raise its arguments as a defense to Plaintiffs' malpractice claim—which Buchanan has already done. The relevant facts follow.

Plaintiffs hired Buchanan to provide business and legal counsel with respect to their purchase of an interest in Pigskin, LLC ("Pigskin"), the company that owned the Tampa Bay Storm, an arena football team. (Dkt. 51 at ¶¶ 10, 26). Plaintiffs allege that Buchanan committed professional malpractice by failing to analyze the financial condition of the Arena Football League ("AFL"), by failing to recommend that others conduct a financial analysis, and by failing to obtain the documents necessary to perform such an analysis. (Id. at ¶¶ 30, 58-59). For instance, Buchanan failed to advise Plaintiffs that the AFL was relying on expansion revenue to fund the league's yearly deficits, and that Pigskin was obligated on a line of credit issued to the AFL. (Id. at ¶¶ 32, 43-44).

During Plaintiffs' first year of ownership, the Tampa Bay Storm lost $2 million. (Id. at ¶ 42). Approximately one year after Plaintiffs' purchase, the AFL voted to suspend play throughout the entire league and to cancel the 2009 season. (Id. at ¶ 47). As a result, Plaintiffs realized no return on their investment, they ultimately lost ownership of the Tampa Bay Storm, and Nucci filed for personal bankruptcy. (Id. at ¶¶ 48, 52).

2

In the Third-Party Complaint, Buchanan alleges that the law firm was retained to provide legal advice, but that it was not retained to provide advice concerning the financial aspects of Plaintiffs' purchase. (Dkt. 52 at ¶ 11). Instead, Nucci assembled a team of professionals, including Bollenback, to aid Nucci in completing the transaction. (Id. at ¶ 12). Buchanan alleges that a "special relationship existed amongst the transaction team, as each member had a specialized skill set upon which the other members relied[.]" (Id.). Bollenback's duty to Nucci and other members of the team "was to evaluate the financial aspects of the purchase of Pigskin, including the tax implications of the purchase." (Id. at ¶¶ 13-14).

Buchanan sent Bollenback a draft of the "Master Due Diligence Request List," to which Bollenback made no revisions or comments. (Id. at ¶ 16; Dkt. 52-6). Buchanan forwarded to Bollenback all of the financial documents that it received, including Pigskin's 2008 budget, its bank statements, and its financial statements. (Dkt. 52 at ¶ 18). Bollenback asked Buchanan to obtain additional documents. (Id. at ¶ 19). Bollenback then prepared a summary chart of Pigskin's income, expenses, and losses from 2003 to 2006. (Id. at ¶ 20; Dkt. 52-9). The expenses included an entry for "Arena Football League - Loss," which showed Pigskin's share of the AFL's overall losses between 2004 and 2006. (Id. at ¶ 21).

Bollenback advised Nucci that Pigskin's "cash flow appears to be negative for all years shown." (Id. at ¶¶ 22-23; Dkt. 52-10). However, Bollenback failed to advise that the AFL was sustaining a loss approximately 20 times greater than Pigskin's own share of the AFL's overall losses. (Dkt. 52 at ¶¶ 24-25). Bollenback also did not advise Nucci or

Buchanan to further investigate the AFL losses or to seek additional documents from the AFL, such as financial statements and tax returns. (Id. at ¶¶ 26-27).

Buchanan alleges that it is "wholly without fault" and therefore entitled to common-law indemnification from Bollenback. (Id. at ¶¶ 33-34). Buchanan also seeks contribution for Bollenback's "pro rata share of a common liability." (Id. at ¶ 39). Similarly, Buchanan alleges that it is entitled to equitable subrogation, to the extent that Buchanan pays damages on Bollenback's behalf. (Id. at ¶¶ 45, 47). Bollenback moves to dismiss each claim with prejudice.

## STANDARD

A complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. The factual allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Although a court must accept as true all factual allegations, that rule does not extend to legal conclusions. Iqbal, 556 U.S. at 678. Thus, a complaint that relies on "labels and conclusions or a formulaic recitation of the elements of a cause of action" is not sufficient to state a claim for relief. Id. (internal quotation marks omitted). Only when a complaint includes well-pleaded factual allegations will a court assume the veracity of those facts and determine whether the facts give rise to a plausible claim. Id. at 679.

## DISCUSSION

### Common law indemnification

A third-party claim for common-law indemnification requires two elements: (1) the party seeking indemnity must be without fault, and its liability solely vicarious, constructive, derivative, or technical, and (2) the party against whom indemnity is sought must be wholly at fault. Heapy Eng'g, LLP v. Pure Lodging, Ltd., 849 So. 2d 424, 425 (Fla. 1st DCA 2003); Houdaille Indus., Inc. v. Edwards, 374 So. 2d 490, 492 (Fla. 1979). The parties must have a "special relationship" for vicarious, constructive, derivative, or technical liability to exist. Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 642 (Fla. 1999); Houdaille, 374 So. 2d at 492. Because the party seeking indemnity must be without fault, "there can be no indemnity between joint tortfeasors." Houdaille, 374 So. 2d at 493. If both parties are at fault, no matter how slight, "the principles of indemnity preclude" recovery. Id. at 494.

Plaintiffs sue Buchanan for legal malpractice. If Plaintiffs ultimately prevail on the malpractice claim, Plaintiffs will have demonstrated that Buchanan neglected a reasonable duty. See Horowitz v. Laske, 855 So. 2d 169, 173 (Fla. 5th DCA 2003) (listing the elements of a legal malpractice claim). Buchanan therefore would be "at fault" and unable to establish the first element of its indemnification claim. See Mendez-Garcia v. Galaxie Corp., No. 8:10-CV-788, 2011 WL 5358658, at *5 (M.D. Fla. Nov. 3, 2011) (explaining that, if the jury found for the plaintiffs on the negligence claim, the defendant would necessarily be at fault and precluded from seeking common-law indemnity); Lee v. Spicola, No. 86-1808-civ, 1988 WL 152013, at *3 (M.D. Fla. Dec. 9, 1988) (holding that, if the defendant was held liable for securities fraud, "he will have been found to be negligent and therefore

5

he will not be entitled to be indemnified"); <u>Walter Taft Bradshaw & Assocs., P.A. v. Bedsole</u>, 374 So. 2d 644, 646 (Fla. 4th DCA 1979) (affirming dismissal of third-party indemnification claim with prejudice, where the third-party plaintiff was allegedly negligent); <u>Zeiger Crane Rentals, Inc. v. Double A Indus., Inc.</u>, 16 So. 3d 907, 911–12 (Fla. 4th DCA 2009) (holding that "it is a legal impossibility" for a party accused of gross negligence to be successful in a claim for indemnification).

Buchanan places primary reliance on <u>Diplomat Properties Limited Partnership v. Tecnoglass, LLC</u>, 114 So. 3d 357 (Fla. 4th DCA 2013), which involved an underlying claim for breach of contract. Buchanan's reliance is misplaced. In contrast to a tort action, a party may breach a contractual term without being "at fault," and may therefore seek indemnification. <u>Id.</u> at 361-62. For instance, a party may breach an installation contract by installing doors that were negligently designed by another party. <u>Id.</u> at 359, 361. Similarly, a retailer may be strictly liable for selling a defective product without being truly "at fault." <u>K-Mart Corp. v. Chairs, Inc.</u>, 506 So. 2d 7, 9 (Fla. 5th DCA 1987) ("The mere selling of a defective product by a retailer does not constitute 'fault'"). In this negligence action, however, there can be no dispute that Buchanan is "at fault" to the extent that Plaintiffs establish Buchanan's professional malpractice. <u>Mendez-Garcia</u>, 2011 WL 5358658, at *5.

Underscoring this conclusion, although Buchanan alleges that the parties have a "special relationship," Buchanan pleads no facts indicating that Buchanan could be held vicariously, constructively, or technically liable for Bollenback's alleged negligence. To the contrary, Buchanan alleges that it was not retained to provide financial advice and that Bollenback was retained to provide such advice. (Dkt. 52 at ¶¶ 10-14); <u>Mendez-Garcia</u>, 2011 WL 5358658, at *6.

Buchanan's proper course is to plead Bollenback's alleged fault as a defense to Plaintiffs' malpractice claim, as Buchanan has already done. (Dkt. 55 at 11-12); Houdaille, 374 So. 2d at 494. Because Buchanan provides no legal authority indicating that it will be able to state a viable indemnification claim, Count I is dismissed with prejudice.

### Contribution

In Count II, Buchanan seeks contribution for Bollenback's "pro rata share of a common liability." (Dkt. 52 at ¶ 39). Bollenback maintains that this claim is due to be dismissed because it is obsolete in light of changes to Florida law.

In 2006, the Florida Legislature eliminated joint and several liability in negligence actions, providing that a court "shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability." Fla. Stat. § 768.81(3); Williams v. Davis, 974 So. 2d 1052, 1061 n.10 (Fla. 2007). Thus, a party is "liable only for the share of total damages proportional to its fault." Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1178 (11th Cir. 2013). As a result of this amendment, courts consistently hold that a third-party claim for contribution is obsolete in negligence actions, and that the party seeking contribution should instead plead the fault of the non-party as an affirmative defense. Brown v. Bottling Grp., LLC, No. 8:15-CV-325, 2016 WL 3883192, at *3 (M.D. Fla. July 18, 2016); Mendez-Garcia, 2011 WL 5358658 at *4 (citing T & S Enters. Handicap Accessibility, Inc. v. Wink Indus. Maint. & Repair, Inc., 11 So. 3d 411, 412-13 (Fla. 2d DCA 2009)).

Buchanan's reliance on cases arising prior to the 2006 amendment is unpersuasive. Count II is therefore dismissed with prejudice, although Buchanan may raise its arguments as a defense.

### Equitable subrogation

In Count III, Buchanan asserts a claim for equitable subrogation, which is an appropriate remedy when a party pays a claim that, in equity, should have been paid by another party. Welch v. Complete Care Corp., 818 So. 2d 645, 648 (Fla. 2d DCA 2002). Under Florida law, equitable subrogation is available only when the party seeking subrogation is "not primarily liable for the debt." Id. (quoting Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999)).

Buchanan bases its claim for subrogation on the allegation that it will only become liable based a theory of "secondary liabiliy – such as constructive or vicarious liability" given its "special relationship" with Bollenback. (Dkt. 52 at ¶¶ 44, 47). As discussed above, Buchanan alleges no facts indicating that any type of special relationship exists on which vicarious, constructive, technical, or derivative liability could be based. Nor does Buchanan cite any legal authority supporting an equitable subrogation claim under the facts of this case. Count III is therefore dismissed with prejudice.

### CONCLUSION

Based on the foregoing, it is **ORDERED** that Michael Bollenback and Bollenback & Forret, P.A.'s Motion to Dismiss the Third-Party Complaint (Dkt. 63) is **GRANTED**. The claims asserted in the Third-Party Complaint are dismissed with prejudice.

**DONE AND ORDERED**, in Chambers, in Tampa, Florida on this ____ day of October, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of record